# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABDUL RASHEED, | : Civil No. 3:20-CV-00154 |
| Plaintiff, | : |
| v. | : |
| SGT. SAEZ, *et al.*, | : |
| Defendants. | : Judge Jennifer P. Wilson |

## **MEMORANDUM**

Presently before the court is a motion to dismiss Plaintiff Abdul Rasheed's amended complaint filed by Defendants Superintendent Laurel Harry, Sgt. Saez, and Corrections Officer ("CO") Emig ("Defendants"). (Doc. 27.) Self-represented Plaintiff Abdul Rasheed filed this action after he was allegedly assaulted by prison staff and then denied medical attention for his injuries. Because the Eleventh Amendment bars Plaintiff's official capacity claims against Defendants and Plaintiff fails to allege the personal involvement of Superintendent Harry in the alleged constitutional misconduct by prison staff, these claims will be dismissed with prejudice. However, the court will deny the motion to the extent that it is based on Plaintiff's failure to plead the exhaustion of his administrative remedies as Defendants bear the burden of proving this affirmative defense. Defendants will be directed to file an answer to the amended complaint in accordance with the Federal Rules of Civil Procedure.

## BACKGROUND AND PROCEDURAL HISTORY

On January 24, 2020, Abdul Rasheed ("Plaintiff" or "Rasheed") filed this civil rights action pursuant to 42 U.S. § 1983 after he was allegedly assaulted by staff on May 14, 2019 at the Camp Hill State Correctional Institution ("SCI–Camp Hill"), in Camp Hill, Pennsylvania.[1]  (Doc. 1.)  On March 23, 2020, Rasheed filed an amended complaint, which is the operative pleading in this matter.  (Doc. 9.)  Named as Defendants are the following SCI-Camp Hill employees:  Sgt. Saez, Superintendent Laurel Harry, CO Emig, Lt. John Doe, CO John Doe, and Nurse Ciara.[2]  (*Id*.)

According to the allegations in the amended complaint, on the evening of May 14, 2019, while residing in cell A-7 on K Block, Rasheed was scheduled for a 7 p.m. phone call.  (*Id*., ¶ 21.)  Three to four minutes into Rasheed's call, Sgt. Saez told him to "finish up" his call.  Within "several minutes" of Sgt. Saez's first order, he again told Plaintiff "to hurry up and finish his call."  (*Id*., ¶ 25.)  "[W]ithin [a] minute" of Sgt. Saez's second order he directed CO Doe to "shut Plaintiff's phone off."  (*Id*., ¶ 26.)  When Rasheed asked Sgt. Saez why he shut off his phone, Sgt. Saez responded that he "wasn't playing no fucking games and that he told plaintiff

---

[1] Rasheed is presently housed at SCI–Fayette in Lavelle, Pennsylvania.  *See* Doc. 25.

[2] To date, Lt. John Doe, CO John Doe and Nurse Ciara have not been served.  This matter will be addressed further *infra*.

2

to finish his call." (*Id.*, ¶ 28.) When Rasheed expressed his displeasure with Sgt. Saez's use of profane language, Sgt. Saez removed his Oleoresin Capsicum ("OC") spray from his holster and told Rasheed to "get to [his] fucking cell." After Rasheed continued to express his unhappiness with Sgt. Saez's actions, Sgt. Saez told Plaintiff to "go lock in before I spray you." (*Id.*, ¶¶ 32–33.)

While en route to his cell, Sgt. Saez ran up behind Rasheed and sprayed him in the back of the head with OC spray and pushed him into a mop closet. (*Id.*, ¶ 35.) Sgt. Saez pushed Rasheed to the ground, placed him in handcuffs, again dispensed his OC spray, all while punching and kicking him in the face and groin. (*Id.*, ¶ 36.) Sgt. Saez yelled that "he would tear plaintiff's penis off shove it in his mouth and make sure he'll never have children." (*Id.*, ¶ 37.) CO Doe remained in the unit "bubble" and never attempted to intervene or come to Rasheed's aid. (*Id.*, ¶ 38.)

Rasheed heard an emergency code being called to clear the area. (*Id.* at ¶ 39.) CO Emig was the first to respond to the emergency code. (*Id.*, ¶ 40.) Upon arriving CO Emig asked, "Is that inmate Rasheed from N-Block?" (*Id.*, ¶ 41.) CO Emig then switched places with Sgt. Saez and placed his knee on Rasheed's back and began punching Plaintiff in the head. (*Id.*, ¶ 42.)

Once additional officers arrived, CO Emig, Lt. Doe and CO Doe transported Rasheed to the institution's Restricted Housing Unit ("RHU") holding cell.

3

Rasheed told Lt. Doe that staff physically and sexually assaulted him. (*Id.*, ¶¶ 43–44.) Nurse Ciara arrived at the RHU and photographed Rasheed's injuries. (*Id.*, ¶ 45.) Rasheed was then placed in RHU cell B16. (*Id.*, ¶ 46.)

At some point, medical staff appeared at cell B16 to conduct a "psych assessment" of Rasheed. When Plaintiff complained of his various injuries, staff told him to "put in a sick call slip." (*Id.*, ¶ 47.) Despite the severity of his injuries and excruciating pain, Rasheed received only Tylenol. (*Id.*, ¶ 48.) Rasheed was placed on P block following his release from the RHU. No Prison Rape Elimination Act ("PREA") investigation was ever conducted after Rasheed reported being physically and sexually assaulted by staff. (*Id.*, ¶ 50.) Sgt. Saez continued to harass Rasheed after grieving the issues of May 14, 2019. (*Id.*, ¶ 51.) Rasheed claims he was placed in the RHU for initiating this action. On January 21, 2020, Sgt. Saez approached Rasheed's cell and stated, "you['re] a pussy bitch for filing a complaint you keep it up I'm going to put my foot up your ass." (*Id.*, ¶ 53.)

Rasheed alleges an Eighth Amendment excessive use of force and related state law claims against Sgt. Saez and CO Emig. He also claims CO Emig, Lt. Doe and CO Doe failed to intervene when Sgt. Saez and CO Emig were assaulting him. He also claims all Defendants, including Nurse Ciara, were deliberately

4

indifferent to his serious medical needs following the May 14, 2019 assault.  He seeks monetary compensatory and punitive damages.

Defendants filed a motion to dismiss the amended complaint and supporting brief on August 24, 2020.  (Docs. 27–28.)  Rasheed filed a timely opposition brief.  (Doc. 29.)  Defendants did not file a reply in support of their motion.  The motion is ripe for disposition.

## JURISDICTION

This court has jurisdiction over Plaintiff's 42 U.S.C. § 1983 suit under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Further, venue is appropriate because the action detailed in the amended complaint occurred in the Middle District of Pennsylvania.

## STANDARD OF REVIEW

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

A complaint filed by a self-represented plaintiff must be liberally construed and "held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 - 21 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Yet, even a self–represented plaintiff "must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). Self–represented plaintiffs are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014). A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002).

**DISCUSSION**

### A. Failure to allege the Personal Involvement of Superintendent Harry.

Section 1983 provides that persons acting under color of state law may be held liable if they deprive an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See* 42 U.S.C. § 1983. To state a Section 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1998); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey,* 481 F.3d 187, 210 (3d Cir. 2007). There is no *respondeat superior* liability under Section 1983. (*Id.*) "[A] government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct." *Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 71 (3d Cir. 2011). "[T]here are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated

7

in violating plaintiffs rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho* v. *Fisher*, 423 F.3d 347, 354 (3d Cir. 2005); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1998). Subsequent knowledge of an incident is insufficient to demonstrate that a state actor played an "affirmative part" in the alleged misconduct. *See Rode*, 845 F.2d at 1207–08 (3d Cir. 1988) (the after-the-fact submission of a grievance is "simply insufficient" to establish a defendant's knowledge of an underlying constitutional violation at the time it occurred); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (Grievance Coordinator and Superintendent's involvement in review and denial of grievance insufficient to establish personal involvement). Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode,* 845 F.2d 1208.

    Defendants seek dismissal of all claims against Superintendent Harry based of Rasheed's failure to allege her personal involvement in the events of May 14,

2019. (Doc. 28, p. 9.)³ Defendants correctly point out that aside from identifying her as a Defendant, Rasheed does not make any specific allegations concerning Superintendent Harry anywhere in his 19-page amended complaint. (Doc. 9.) Rasheed counters in his opposition brief that Superintendent "Harry was informed through the Grievance System and staff request form of plaintiff's allegations." (Doc. 29, p. 8.) First, these allegations do not appear in the amended complaint. Rasheed's attempt to broaden his claims against Superintendent Harry in his opposition brief is improper. *See Frederico v. Home Depot*, 507 F.3d 188, 201-202 (3d Cir. 2007) (citing *Commw. of Pa. ex. Rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotation and citation omitted). Second, even if the court considered his additional allegations against Superintendent Harry, they are insufficient to allege her personal involvement in the May 14, 2019 events as they occurred after the fact. Accordingly, the court will grant Defendants' motion to dismiss claims against Superintendent Harry based on Rasheed's failure to allege her personal involvement in the underlying claims.

---

³ For ease of reference, the court utilizes the page numbers from the CM/ECF header.

## B. Eleventh Amendment Immunity Bars Rasheed's Official Capacity Claims.

The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schools*, 341 F.3d 234, 238 (3d Cir. 2003). "Because the Commonwealth of Pennsylvania's Department of Corrections is part of the executive department of the Commonwealth, … it shares in the Commonwealth's Eleventh Amendment Immunity." *Lavia v. Pa., Dept. of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (citing 71 PA. STAT. § 61). Suits against state officials acting in their official capacities are really suits against the employing government agency, and as such, are also barred by the Eleventh Amendment. *See Hafer v. Melo*, 502 U.S. 21, 25–27 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989). State officials sued in their individual capacities are "persons" within the meaning of Section 1983. *See Hafer*, 502 U.S. at 31. Thus, the Eleventh Amendment does not bar suits for monetary damages brought under Section 1983 against state officials in their individual capacities. *Id.* Accordingly, only Rasheed's claims against each named Defendant in his or her official capacity will be dismissed with prejudice.

### C. Rasheed is not Required to Plead the Exhaustion of his Administrative Remedies.

Defendants argue that "Plaintiff's Amended Complaint fails to include sufficient factual allegations from which it may be inferred that he exhausted his administrative remedies prior to filing this suit." (Doc. 28, p. 12.)  Because failure to exhaust is an affirmative defense to be plead and proven by Defendants, Rasheed was not required to plead or demonstrate exhaustion in his amended complaint.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).  Accordingly, this is not a basis for dismissal of the amended complaint.

### D. Unserved John Doe Defendants and Nurse Ciara

Presently, Rasheed has not presented sufficient information to the court to identify and serve several John Doe Defendants.  However, the court recognizes that Rasheed, who is self-represented and proceeds *in forma pauperis*, has an obligation to provide the requested information to the court for the purpose of service of process.  *See* Fed. R. Civ. P. 4(m) and 28 U.S.C. § 1915(d).  As such, Rasheed shall promptly serve defense counsel with a discovery request, served pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, to learn the first name, surname, and addresses of Lt. John Doe, CO John Doe and Nurse Ciara who are alleged to have contact with him following the May 14, 2019 incident on K Block and his transfer, medical assessment, and placement in the RHU.  Within

11

90 days, Rasheed shall provide the court with the proper name and valid address where each John Doe Defendant and Nurse Ciara may be served.  Plaintiff's failure to provide this information will result in the dismissal of the amended complaint as to these defendants pursuant to Federal Rule of Civil Procedure 4(m), which requires that a defendant be served within 90 days after the complaint is filed.

## Conclusion

For the above stated reasons, Rasheed's official capacity claims against all Defendants will be dismissed with prejudice, as will his claims against Superintendent Harry.  Within 90 days, Rasheed shall provide the court with the proper names and addresses of the unserved defendants.  Failure to do so will result in the dismissal of claims against them pursuant to Fed. R. Civ. P. 4(m).  Defendants' motion to dismiss the amended complaint based on Rasheed's failure to plead the exhaustion of his administrative remedies is denied.  Defendants Saez and CO Emig shall file an answer to the amended complaint in accordance with the Federal Rules of Civil Procedure.  An appropriate order will issue.

s/ Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated:  March 30, 2021