IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDUL RASHEED, | : | Civil No. 3:20-cv-00154 |
| Plaintiff, | : | |
| v. | : | |
| LT. SAEZ, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is Defendants' motion for summary judgment. Plaintiff brings an Eighth Amendment claim under 42 U.S.C. § 1983 and an assault and battery claim under Pennsylvania law premised on an altercation that occurred on May 14, 2019. Because Plaintiff failed to request monetary compensation in his initial grievance, such relief is procedurally defaulted. Monetary compensation is the sole relief sought in Plaintiff's federal complaint. Therefore, Defendant's motion for summary judgment will be granted, and judgment will be granted in favor of Defendants and against Plaintiff.

### PROCEDURAL BACKGROUND

Plaintiff, a self-represented inmate currently housed at the State Correctional Institution at Fayette ("SCI-Fayette"), initiated this action in January of 2020. (Doc. 1.) In his complaint, he raises an Eighth Amendment claim against Defendants Lieutenant Saez ("Saez"), Warden Laurel Harry ("Harry"), and an

1

unknown correctional officer.  (Doc. 1.)  Plaintiff filed an amended complaint in March of 2020 naming Saez,[1] Harry, Correctional Officer Emig ("Emig"), Medical Staff Ciara Doe, Lieutenant Doe (I), Lieutenant Doe (II), Correctional Officer Doe (I), and Correctional Officer Doe (II) and adding an assault and battery claim under state law.  (Doc. 9.)

Defendants filed a motion to dismiss in August of 2020.  (Doc. 27.)  The court dismissed all claims against Defendants in their official capacity and all claims against Defendant Harry.  (Doc. 34.)  The court also granted Plaintiff ninety days to name the unnamed defendants.  (Doc. 33.)  Plaintiff failed to meet this deadline.  Therefore, the Defendants Medical Staff Ciara Doe, Lieutenant Doe (I), Lieutenant Doe (II), Correctional Officer Doe (I), and Correctional Officer Doe (II) will be dismissed from the case due to Plaintiff's failure of service.

Defendants Saez and Emig filed a motion for summary judgment.  (Docs. 69.)  Plaintiff responded to the motion, Doc. 72, and the deadline for Defendants' reply has passed.  The motion is now ripe to be addressed by this court.

## JURISDICTION AND VENUE

The court has federal question jurisdiction over the complaint as it asserts claims under 42 U.S.C. § 1983.  *See* 28 U.S.C. § 1331. Venue is appropriate

---

[1] In the amended complaint, Defendant Saez is identified as a sergeant.  (Doc. 9.)

because all actions detailed in the amended complaint occurred within the Middle District of Pennsylvania. 28 U.S.C. § 1391(b)(2).

## STANDARD

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the

court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### A. Facts Material to Plaintiff's Claims[2]

The parties agree that on May 14, 2019, Plaintiff was an inmate at the SCI-Camp Hill and an altercation occurred following a phone call.  The parties disagree over the specific events of the altercation.  The court will now summarize the parties' differing accounts of events following the telephone call.

#### 1.  Defendants' Statement of Facts

On May 14, 2019, Plaintiff placed a telephone call from the K-Block at phone A-3.  (Doc. 70, ¶ 4.)  Defendants state that the call lasted from 7:51 pm to 8:06 pm and provide a telephone call detail report as evidence of the length of the call.  (*Id.*)  During the phone call, Plaintiff was given several orders by Defendant Saez to finish the call.  (Doc. 70, ¶ 5.)  When Plaintiff failed to end his call, Defendant Saez directed a non-party corrections officer stationed at the K-Block Control Center to automatically end the call.  (Doc. 70, ¶ 6.)

---

[2] In accordance with the court's Local Rules, Defendants filed a statement of material facts. (Doc. 70.) Plaintiff included a declaration in opposition to defendant's motion for summary judgment in his brief in opposition. (Doc. 72-1, pp. 2–5.) From those statements, and the evidence submitted by the parties, the court has culled the material facts in this matter and has set forth those facts in this section.

Plaintiff responded by stating "[w]hy the fuck did you turn the phone off." (Doc. 70, ¶ 7.) Defendant Saez ordered Plaintiff to return to his cell several times. (Doc. 70, ¶ 8.) After Plaintiff failed to return to his cell, Defendant Saez began escorting Plaintiff to his cell. (Doc. 70, ¶ 9.) Plaintiff became combative by "turning towards Saez in an aggressive manner with closed fists," and Defendant Saez deployed OC spray in Plaintiff's face, placed Plaintiff on the ground, and then Plaintiff became compliant without further incident. (Doc. 70, ¶¶ 10–11.)

At 8:13 pm a response team including Defendant Emig and several non-party corrections officers arrived at Plaintiff's location and by 8:15 pm began recording a video showing Plaintiff walking under his own power to the medical department for medical treatment including washing of his eyes and taking photos of his face, hands, and knuckles. (Doc. 70, ¶¶ 13a–13d.)

Plaintiff was then taken to the Restricted Housing United where he was strip searched by a non-party officer. (Doc. 70 ¶ 13e.) Prior to the strip search Defendant Emig replaced a female member of the response team who had previously been operating the camera. (Doc. 70. ¶ 13f.) At 8:39 pm, Defendant Emig became the camera operator and Plaintiff stated on camera that he was assaulted by an officer but did not identify Defendant Emig or any other specific officer. (*Id.* ¶ 13g.) At 8:40 pm, the strip-search was completed and the response team escorted Plaintiff from the Restricted Housing Unit to EB16. (*Id.* ¶ 13h.)

6

At 9:46 pm, Plaintiff was evaluated again by a non-party medical official but refused to answer any questions. (*Id.* ¶ 14.)

At 10:12 pm, Plaintiff was issued misconduct number D210898. (*Id.* ¶ 15.)

### 2. Plaintiff's Statement of Facts

On May 14, 2019, Plaintiff was let out of his cell on K-Block A-7 to make an assigned phone call at around 7:40 pm. (Doc. 72-1, p. 3.)[3] Plaintiff states that minutes into Plaintiff's phone call, Defendant Saez directed the corrections officer controlling the bubble to disconnect Plaintiff's phone call. (*Id.*) Defendant Saez was standing on the C.O. bubble steps when Plaintiff asked him why he had Plaintiff's phone call disconnected. (*Id.*) Defendant Saez stated that "[he] was done playing fucking games. Go to your cell." (*Id.*) Plaintiff then asked Defendant Saez why he was talking to him in that manner and if he had something against Plaintiff. (*Id.*) Defendant Saez then pulled out his OC spray and ordered Plaintiff to his cell, and Plaintiff complied. (*Id.*) As Plaintiff turned to return to his cell, Defendant Saez ran down the C.O. bubble steps and deployed his OC spray in Plaintiff's face while forcing him onto the supply closet floor where he handcuffed Plaintiff and began spraying OC in his face and mouth. (*Id.*, p. 4.) Defendant Saez punched, kicked, and kneed

---

[3] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

Plaintiff in the face and groin area while making comments about Plaintiff's anatomy and ability to reproduce. (*Id.*)

Defendant Saez then called an emergency code and Defendant Emig was the first to arrive. (*Id.*) Defendant Emig asked "Is that Inmate Rasheed" and then "took the place of Defendant Saez and begin [sic] punching and kneeing plaintiff in his face and head area." (*Id.*)

### 3. Grievance No. 802133

On May 20, 2019, Plaintiff filed Grievance No. 802133. (Doc. 70, p. 21.) He alleged he was physically and sexually assaulted and sprayed with OC while following a direct order to return to his cell. (*Id.*) He does not name a DOC employee but refers to a single individual as a sergeant. (*Id.*) He further asks that this officer be fired and reports physical and psychological effects from the incident. (*Id.*)

The Grievance was investigated. On July 15, 2019, it was found that Plaintiff's allegations were unsubstantiated. (*Id.*, p. 17.) On October 2, 2019, Plaintiff's Grievance was denied. (*Id.*, p. 64.) Plaintiff appealed this denial by filing a form DC-135A requesting the video footage from the date of the incident be held, the inmates of K-Block be interviewed, $1.5 million in damages for pain and suffering, and all officers involved be fired. (*Id.*, p. 63.)

The Facility Manager's Appeal Response denied Plaintiff's appeal on October 15, 2019.  (*Id.*, p. 62.)  A final decision denying Plaintiff's Grievance appeal was filed on November 14, 2019.  (*Id.*, p. 61.)

**B. Plaintiff Failed to Properly Exhaust His Administrative Remedies.**

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e *et seq.*, requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations.  *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).  Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system.  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citation omitted) (quoting *Woodford*, 548 U.S. at 88)).  "[C]ompliance with the administrative remedy scheme" means "substantial" compliance with the prison's grievance procedures.  *See Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004) (citing *Nyhuis v. Reno*, 204 F.3d 65, 77–78) (3d Cir. 2000).  Failure to exhaust available administrative remedies is an affirmative defense.  *Ray v. Kertes*, 285 F.3d 287, 292 (3d Cir. 2002).

9

Defendants have properly raised the matter of exhaustion and assert that Plaintiff failed to request monetary compensation in Grievance No. 802133 and failed to identify Defendant Emig. (Doc. 70, p. 5–9). Because Plaintiff failed to request monetary relief in Grievance No. 802133, such relief is procedurally defaulted. Since the only relief sought by Plaintiff in his federal complaint is monetary compensation, Defendant's motion for summary judgment will be granted, and the court need not address the merits of Plaintiff's complaint.

### 1. Plaintiff Failed to Request Monetary Compensation in His Initial Grievance.

Plaintiff's initial grievance does not request monetary compensation. (Doc. 70, p. 21). Pa. Dept. of Cor. Policy DC-ADM-804 Sec. 1.A.11.d states that "[if] the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." Although Plaintiff's grievance contains allegations of inmate abuse invoking DC-ADM-001, since Plaintiff choose to report the allegations through the prison's grievance system rather than though other methods authorized by DC-ADM 001, he is required to comply with the requirements of DC-ADM 804 grievance process. *See Johnson v. Lasko*, No. 1:20-cv-149, 2022 WL 4396192, at *5 (W.D. Pa. Sep. 23, 2022).

This court has granted summary judgment in favor of the defendants when a prisoner fails to seek monetary damages in his grievance. *See Mobley v. Snyder*,

10

No. 1:13-cv-00772, 2015 WL 5123909, at *8-*9 (M.D. Pa. Sept. 1, 2015) (granting summary judgment in favor of defendants when a prisoner failed to clearly assert a request for monetary compensation in a grievance including allegations of inmate abuse); *Collins v. Walsh*, No. 1:09-cv-1932, 2012 WL 3536803, at *3 (M.D. Pa. Aug. 15, 2012) (granting summary judgment where the plaintiff failed to file a brief in opposition and did not request monetary relief in his initial grievance). "[W]here prison policy requires an inmate who seeks monetary compensation to request that relief in the inmate's initial grievance, failure to do so will bar claims from monetary compensation in federal court." *Camacho v. Beers*, No. 16-1644, 2018 WL 6618410, at *2 (W.D. Pa. Dec. 18, 2018); *Mobley*, 2015 WL 5123909, at *9; *Sanders v. Beard*, No. 13-358 Erie, 2013 WL 1703582, at *6-7 (M.D. Pa. Apr. 19, 2013)).

In *Spruill*, the Third Circuit rejected a procedural default claim premised upon an inmate's failure to request monetary relief in his initial grievance because "the grievance policy in effect at that time permitted—but did not require—an inmate to identify the relief sought (including monetary relief) in his grievance." *See Wright v. Sauers*, 729 F. App'x 225, 227 (3d Cir. 2018) (citing *Spruill*, 372 F.3d at 233-34 (DC-ADM 804 at that time stated, "[t]he inmate may include a request for compensation or other legal relief")); *see also Hobson v. Tiller*, No. 1:18-cv-00233-SPB-RAL, 2021 WL 2191282, at *7 (W.D. Pa. May 6, 2021),

11

*report and recommendation adopted*, No. CV 18-233, 2021 WL 2190818 (W.D. Pa. May 31, 2021). After the Third Circuit's decision, the Pennsylvania Bureau of Prisons amended its policy, including mandatory language regarding monetary relief, adhering to what was suggested by the Third Circuit in *Spruill*. *See Wright*, 729 F. App'x at 227; *see also Hobson*, 2021 WL 2191282, at *7. In *Wright*, the Third Circuit upheld the district court's determination that "[the plaintiff] procedurally defaulted his claim for money damages by failing to request such relief in his grievance" because the "requirement is now mandatory." *See Wright*, 729 F. App'x at 227; *see also Hobson*, 2021 WL 2191282, at *7.

At the time Plaintiff filed Grievance No. 802133, the Department Inmate Grievance System Policy required that "[if] the inmate desires compensation or other legal relief normally available from a court, the inmate *must* request the specific relief sought in his/her initial grievance." Pa. Dept. of Cor. Policy DC-ADM-804 Sec. 1.A.11.d (emphasis added). Monetary damages qualify as "compensation or other legal relief normally available from a court." *Sanders*, 2013 WL 1703582, at *6. Thus, Plaintiff was required to request monetary damages in Grievance No. 802133.

Based on the court's review of Plaintiff's initial grievance, it clearly does not request any monetary relief but asks that the officer involved in the incident be fired. (Doc. 70, p. 21). Nonetheless, Plaintiff asserts that he did request $1.5

million in his grievance. (Doc. 72-1, p. 10). However, Plaintiff cites to his appeal of the initial grievance decision filed on a form DC-135A. (*Id*. citing Doc. 72-2, p. 3) ("This is appealing the Denial of my Grievance 803133 . . ."). As Plaintiff failed to request monetary damages in his initial grievance, he may not pursue such damages now in his federal complaint. Monetary relief is the sole relief sought by Plaintiff in his federal complaint. (Doc. 9, p. 18.) Therefore, Defendants have raised an affirmative defense and judgment shall be entered in their favor and against Plaintiff.

## CONCLUSION

Because Plaintiff failed to meet the deadline set by the court to identify the unserved parties in this action, Defendants Medical Staff Ciara Doe, Lieutenant Doe (I), Lieutenant Doe (II), Correctional Officer Doe (I), and Correctional Officer Doe (II) will be dismissed from the case. (Doc. 34.)

Given that Plaintiff is procedurally defaulted from requesting monetary compensation in his federal action and that is the sole relief sought in his amended complaint, the court will grant Defendants' motion for summary judgment and enter judgment in favor of Defendants and against Plaintiff. The Clerk of the Court will be directed to close this case.

An appropriate order will follow.

                                                 <u>s/Jennifer P. Wilson</u>
                                                 JENNIFER P. WILSON
                                                 United States District Court Judge
                                                 Middle District of Pennsylvania

Dated: October 24, 2022